J-S81010-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JOSEPH CHARLES CASWELL | |
| Appellant | No. 1003 MDA 2018 |

Appeal from the Judgment of Sentence Entered May 4, 2018
In the Court of Common Pleas of Lackawanna County
Criminal Division at No.: CP-35-CR-0001630-2016

BEFORE: STABILE, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.: **FILED MARCH 22, 2019**

Appellant Joseph Charles Caswell appeals from the judgment of sentence entered in the Court of Common Pleas of Lackawanna County ("trial court"), following his guilty plea to rape of a mentally disabled person.[1] Appellant's counsel, Donna M. De Vita, Esquire, has filed a petition to withdraw, alleging that this appeal is wholly frivolous, and filed a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009). For the reasons set forth below, we affirm, in part, vacate, in part, and remand to the trial court for further proceedings; counsel's petition to withdraw is denied.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3121(a)(5).

The facts and procedural history of this case are undisputed. As summarized by the trial court:

[The foregoing charge] stemmed from an investigation by the Scranton Police Department's Special Victims Unit after they were notified that [] an autistic female [(the "victim")], who has the mental capacity of a five (5) year old and would not be capable of consenting to sexual activity, was pregnant. After the victim gave birth, [Appellant], who is the victim's cousin, voluntarily appeared at Scranton Police Head Quarters to submit a DNA sample, upon the request of his aunt, the victim's mother. The DNA test results eliminated two other subjects and indicated that [Appellant] was the father with 99.9999% probability. After [Appellant] was taken into custody and **Mirandized**,[2] he waived his **Miranda** rights and informed the officers that he could not be the father because he is sterile. After discussing the DNA test results, [Appellant] stated the intercourse was "an accident." [Appellant] also gave a written statement that he took the victim to get ice cream from the grocery store, before he subsequently parked in the little league parking lot where they began kissing and eventually had intercourse in the backseat.

On October 30, 2017, [Appellant] entered a guilty plea to one (1) count of rape of a mentally disabled person. Prior to entering his guilty plea, [Appellant] executed a lengthy written plea colloquy form in which he indicated his knowledge that the maximum penalty he faced was twenty-five (25) years of confinement and a $25,000.00 fine, the elements of the crimes charged, his satisfaction with counsel, and the terms of the plea agreement. T[he trial c]ourt also conducted an on the record inquiry into the whether [Appellant] was entering a knowing, voluntary, and intelligent plea. [Appellant] advised the [trial court] that he was aware of the rights he was giving up and the penalties he was facing. [Appellant] further admitted that he committed the crime of engaging in sexual intercourse with the victim, a person with a mental disability who was incapable of consent[ing]. After determing that [Appellant] was entering a knowing, voluntary, and intelligent plea, [the trial court] accepted the guilty plea. Sentencing was deferred pending completion of a presentence investigation report [("PSI")].

On May 4, 2018, [the trial court] determined that [Appellant] is a sexually violent predator and imposed sentence. [The trial court] sentenced [Appellant] above the aggravated range to ten (10) to twenty (20) years in a state correctional institution.

---

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

On May 11, 2018, [Appellant] filed a motion for reconsideration of sentence, alleging that [the trial court] imposed an excessive sentence and erroneously relied upon factors contemplated by the guidelines. [The trial court] denied [Appellant's] motion on May 14, 2018, and [Appellant] filed a notice of appeal to [this Court] on June 5, 2018.

Trial Court Opinion, 8/13/18, at 1-3 (internal citations and unnecessary capitalizations omitted). Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On September 25, 2018, Appellant's counsel filed in this Court a motion to withdraw as counsel and filed an *Anders* brief, wherein counsel raises the following issues for our review:

[I.] Whether the sentencing court erroneously relied upon factors that are already taken into consideration by the Sentencing Guidelines, such as the victim's mental disability and Appellant's prior criminal record, when it imposed a sentence above the aggravated range and which sentence is the maximum sentence permitted for the crime charged?

[II.] Whether the sentencing court imposed a harsh and unreasonable sentence?

*Anders* Brief at 4.

When presented with an *Anders* brief, this Court may not review the merits of the underlying issues without first examining counsel's petition to withdraw. *Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). It is well-established that, in requesting a withdrawal, counsel must satisfy the following procedural requirements: 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) provide a copy of the brief to the defendant; and 3) advise the

defendant that he or she has the right to retain private counsel, proceed *pro se* or raise additional arguments that the defendant considers worthy of the court's addition. **Commonwealth v. Lilley**, 978 A.2d 995, 997 (Pa. Super. 2009).

Instantly, counsel's petition to withdraw from representation provides that counsel reviewed the record and concluded that the appeal is frivolous. Furthermore, counsel notified Appellant that she was seeking permission to withdraw and provided Appellant with copies of the petition to withdraw and her **Anders** brief. Counsel also advised Appellant of his right to retain new counsel, proceed *pro se*, or raise any additional points he deems worthy of this Court's attention. Accordingly, we conclude that counsel has satisfied the procedural requirements of **Anders**.

We next must determine whether counsel's **Anders** brief complies with the substantive requirements of **Santiago**, wherein our Supreme Court held:

> [I]n the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361. Here, our review of counsel's brief indicates that she has complied with the briefing requirements of **Santiago**. We, therefore, conclude that counsel has satisfied the minimum requirements of **Anders**/**Santiago**.

Once counsel has met her obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." *Santiago*, 978 A.2d at 355 n.5. Thus, we now turn to the merits of Appellant's appeal.

Appellant's issues on appeal implicate the discretionary aspects of his sentence. Specifically, he argues that the trial court abused its discretion in "double counting" the victim's mental disability and his criminal record to fashion his sentence of 10 to 20 years in prison. Relatedly, Appellant argues that the trial court abused its discretion in imposing upon him the statutory maximum sentence, *i.e.*, a sentence outside of the Sentencing Guidelines and the aggravated range.

At the outset, "we note that when a defendant enters a guilty plea, he or she waives all defects and defenses except those concerning the validity of the plea, the jurisdiction of the trial court, and the legality of the sentence imposed." *Commonwealth v. Stradley*, 50 A.3d 769, 771 (Pa. Super. 2012) (citation omitted). "Our law presumes that a defendant who enters a guilty plea was aware of what he was doing. He bears the burden of proving otherwise." *Commonwealth v. Yeomans*, 24 A.3d 1044, 1047 (Pa. Super. 2011) (citation omitted). Where there have been no sentencing restrictions in a plea agreement, an "open plea," the entry of a guilty plea will not preclude a challenge to the discretionary aspects of sentencing. *Commonwealth v. Dalberto*, 648 A.2d 16, 20 (Pa. Super. 1994), *appeal denied*, 655 A.2d 983

(Pa. 1995). The record in this case reveals that Appellant entered into an open guilty plea. Accordingly, because of his open plea of guilty, Appellant is permitted to challenge the discretionary aspects of his sentence.

It is well-settled that "[t]he right to appeal a discretionary aspect of sentence is not absolute." **Commonwealth v. Dunphy**, 20 A.3d 1215, 1220 (Pa. Super. 2011). Rather, where an appellant challenges the discretionary aspects of a sentence, an appellant's appeal should be considered as a petition for allowance of appeal. **Commonwealth v. W.H.M.**, 932 A.2d 155, 162 (Pa. Super. 2007). As we stated in **Commonwealth v. Moury**, 992 A.2d 162 (Pa. Super. 2010):

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Id.** at 170 (citing **Commonwealth v. Evans**, 901 A.2d 528 (Pa. Super. 2006)). Whether a particular issue constitutes a substantial question about the appropriateness of sentence is a question to be evaluated on a case-by-case basis. **See Commonwealth v. Kenner**, 784 A.2d 808, 811 (Pa. Super. 2001), **appeal denied**, 796 A.2d 979 (Pa. 2002).

Here, Appellant has satisfied the first three requirements of the four-part *Moury* test. Appellant filed a timely appeal to this Court, preserved the issue on appeal through his post-sentence motions, and included a Pa.R.A.P. 2119(f) statement in his brief.[3] We, therefore, must determine only if Appellant's sentencing issues raise a substantial question.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa. Super. 2007). We have found that a substantial question exists "when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa. Super. 2008) (citation omitted), *appeal denied*, 964 A.2d 895 (Pa. 2009).

Here, Appellant has a raised a substantial question with respect to his discretionary aspects of sentence claims. *See Commonwealth v. Bowen*, 975 A.2d 1120, 1120 (Pa. Super. 2009) (noting that a defendant's argument that his sentence "was based on an unconstitutional factor . . . raises a substantial question for our review"); *Commonwealth v. Goggins*, 748 A.2d 721, 728 (Pa. Super. 2000) (*en banc*) (stating that double counting a

---

[3] Rule 2119(f) provides that "[a]n appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." Pa.R.A.P. 2119(f).

defendant's prior record score raises a substantial question), **appeal denied**, 759 A .2d 920 (Pa. 2000); **Commonwealth v. Robinson**, 931 A.2d 15, 27 (Pa. Super. 2007) (a claim that the trial court impermissibly double-counted factors already incorporated in the sentencing guidelines raises a substantial question); **Commonwealth v. McNabb**, 819 A.2d 54, 56–57 (Pa. Super. 2003) (a claim that the trial court relied on impermissible factors raises a substantial question); **Commonwealth v. Fullin**, 892 A.2d 843, 848 (Pa. Super. 2006) (concluding appellant raised substantial question where he argued "that the trial court improperly based [appellant's] aggravated range sentence on a factor that constituted an element of the offense"); **Commonwealth v. Sheller**, 961 A.2d 187, 190 (Pa. Super. 2008) (stating that an "[a]ppellant's contention that the sentencing court exceeded the recommended range in the sentencing guidelines without an adequate basis raises a substantial question for this Court to review."); **Commonwealth v. Lawrence**, 960 A.2d 473, 478 (Pa. Super. 2008) (stating that a claim that a sentence was unreasonable because it was outside the sentencing guidelines raises a substantial question). Accordingly, we will address the merits of Appellant's sentencing claims.

When reviewing a challenge to the trial court's discretion, our standard of review is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record

discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

***Commonwealth v. Bowen***, 55 A.3d 1254, 1263 (Pa. Super. 2012) (quoting

***Commonwealth v. Cunningham***, 805 A.2d 566, 575 (Pa. Super. 2002)),

***appeal denied***, 64 A.3d 630 (Pa. 2013).

We first address Appellant's argument that the trial court abused its discretion in double counting the victim's mental disability and his criminal history in crafting his sentence of 10 to 20 years in prison. Appellant's Brief at 14. In particular, Appellant points out that the victim's mental disability is an element of the charged offense, *i.e.*, rape of a mentally disabled person.[4] ***Id.*** Similarly, Appellant argues that the trial court double-counted his criminal history as it already was reflected in his prior record score. ***Id.*** at 14-15.

Generally, "[i]t is impermissible for a court to consider factors already included within the sentencing guidelines as the *sole* reason for increasing or decreasing a sentence to the aggravated or mitigating range." ***Commonwealth v. Shugars***, 895 A.2d 1270, 1275 (Pa. Super. 2006)

---

[4] As charged in this case, a person commits rape when "the person engages in sexual intercourse with a complainant . . . [w]ho suffers from a mental disability which renders the complainant incapable of consent." 18 Pa.C.S.A. § 3121(a)(5). Section 3121(a)(5) does not provide whether a defendant must know that the victim has a mental disability rendering him or her incapable of consent. The Commonwealth nevertheless must prove *mens rea*. ***Commonweatlh v. Thomson***, 673 A.2d 357, 359 (Pa. Super. 1996). The victim's mental state is a material element of the crimes. Therefore, under Section 302 of the Crimes Code, the Commonwealth must prove, at a minimum, the defendant recklessly disregarded the existence of the victim's mental disability. ***Id.*** (quoting ***Commonwealth v. Cater***, 418 A.2d 537, 539 (Pa. Super. 1980).

(emphasis in original). Additionally, "[t]rial courts are permitted to use factors "already included in the guidelines if, they are used to supplement other extraneous sentencing information." *Id.* When deciding whether a court has improperly based an aggravated sentence on a factor that is already considered by the sentencing guidelines, we have stated:

> [T]he guidelines were implemented to create greater consistency and rationality in sentencing. The guidelines accomplish the above purposes by providing a norm for comparison, *i.e.*, the standard range of punishment, for the panoply of crimes found in the crimes code and by providing a scale of progressively greater punishment as the gravity of the offense increases. . . . The provision of a "norm" also strongly implies that deviation from the norm should be correlated with facts about the crime that also deviate from the norm for the offense, or facts relating to the offender's character or criminal history that deviates from the norm and must be regarded as not within the guidelines contemplation. Given this predicate, simply indicating that an offense is a serious, heinous or grave offense misplaces the proper focus. The focus should not be upon the seriousness, heinousness or egregiousness of the offense generally speaking, but, rather, upon how the present case deviates from what might be regarded as a "typical" or "normal" case of the offense under consideration.

*Fullin*, 892 A.2d at 848 (citation omitted). Moreover, "[a]n aggravated range sentence [is] justified to the extent that the individual circumstances of [the defendant's] case are atypical of the crime for which [the defendant] was convicted, such that a more severe punishment is appropriate." *Id.* The *Fullin* Court affirmed an aggravated range sentence because the trial court justified the sentence by opining on "the extreme indifference for the consequences of [the defendant's] actions and because of the extreme nature of the harm to the victim." *Id.* at 849 (citation omitted).

Here, the trial court noted that given the extent of the victim's mental limitations, her mental disability was an appropriate supplemental factor. Trial Court Opinion, 8/13/18, at 9. The trial court intimates that the individual circumstances of this case are atypical of the crime for which Appellant was convicted. Thus, the trial court maintains that Appellant's statutory maximum sentence was appropriate.

Regardless of whether this case is typical or atypical, and even if the trial court impermissibly considered the victim's mental disability or Appellant's criminal history, it also considered a number of additional, permissible factors in sentencing Appellant to the statutory maximum sentence of 10 to 20 years' imprisonment. As the trial court explained:

> In imposing sentence, [the trial court] noted the relative sophistication of [Appellant], as compared to the victim, as an aggravating factor. [Appellant] is of average intelligence, was honorably discharged from the military, and has a lengthy work history; in contrast, the victim is non-verbal with a significant mental disability and the mental capacity of a 5 year old child. [The trial court] was also aware of [Appellant's] long criminal history resulting in a prior record score of 5, including a past conviction for a sexual offense [(indecent assault)]. [The trial court] also noted the age difference between [Appellant] and the victim; [Appellant] was 58 years old at the time, and the victim was 27. [The trial court] further noted that [Appellant] abused his position of trust and his relationship with the victim, as he took his mentally disabled cousin for ice cream and then impregnated her. An additional aggravating factor this [c]ourt found compelling was the fact that the victim became pregnant and gave birth as a result of this rape. As noted by the Commonwealth , this caused tremendous amount of trauma and stress to the mentally disabled victim, who does not have the mental capacity to understand what was happening to her body. Finally, this [c]ourt considered [Appellant's] statements regarding his lack of responsibility for his conduct. Although [Appellant] confessed to the police and entered a guilty plea, [he] did not completely accept responsibility. Despite [Appellant's] contentions, confessing to the police and entering a guilty plea does not amount to a complete acceptance of responsibility. Specifically, during

[Appellant's] interview for his presentence investigation report, [he] gave his version of events as follows:

> "They say that I raped by cousin. I didn't rape her, it was consensual. They say because of her disability that it's rape that I had sex with her. She's non-verbal. She had a fight with her mom so I picked her up and we went out to the park. I gave her a hug to comfort her and we ended up having sex up at the park. She started kissing me and it went from there."

.  .  .  .

Even after his arrest and guilty plea, [Appellant] characterized his behavior as consensual and even claimed that the victim initiated the contact. The [trial court] is of the opinion that is not a genuine acceptance of responsibility.

Trial Court Opinion, 8/13/18, at 8-9 (record citations omitted). Given the trial court's use of other permissible factors, it did not abuse its discretion in considering the victim's mental disability and Appellant's criminal history. *See* *Bowen*, 975 A.2d at 1127 (noting that, despite relying on an impermissible factor, the trial court evaluated several permissible factors in imposing an aggravated-range sentence); *Commonwealth v. P.L.S.*, 894 A.2d 120, 133 (Pa. Super. 2006) (finding that even if the trial court considered an inappropriate factor at sentencing, "the court offered significant other support for sentencing in excess of the guidelines in this case"), *appeal denied*, 906 A.2d 542 (Pa. 2006).

We next address Appellant's argument that the trial court abused its discretion in imposing upon him a statutory maximum sentence of 10 to 20 years' incarceration because the sentence is unreasonable. Appellant's Brief at 15-16.

It is settled that the trial court may sentence a defendant outside the range provided by the sentencing guidelines as long as the trial court gives its reasons for doing so on the record. ***Commonwealth v. Walls***, 846 A.2d 152, 158 (Pa. Super. 2004), ***reversed on other grounds***, 926 A.2d 957 (Pa. 2007).

> When reviewing a sentence outside of the guideline range, the essential question is whether the sentence imposed was reasonable. ***Commonwealth v. Walls***, [] 926 A.2d 957, 962 ([Pa.] 2007). An appellate court must vacate and remand a case where it finds that "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S.A. § 9781(c)(3). In making a reasonableness determination, a court should consider four factors:
>
> > (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
> >
> > (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
> >
> > (3) The findings upon which the sentence was based.
> >
> > (4) The guidelines promulgated by the commission.
>
> 42 Pa.C.S.A. § 9781(d). A sentence may be found unreasonable if it fails to properly account for these four statutory factors. A sentence may also be found unreasonable if the "sentence was imposed without express or implicit consideration by the sentencing court of the general standards applicable to sentencing." ***Walls***, 926 A.2d at 964. These general standards mandate that a sentencing court impose a sentence "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b).

***Commonwealth v. Sheller***, 961 A.2d 187, 190-91 (Pa. Super. 2008), ***appeal denied***, 980 A.2d 607 (Pa. 2009).

> Simply put,
>
> Where an excessiveness claim is based on a court's sentencing outside the guideline ranges, we look, at a minimum, for an indication on the record that the sentencing court understood the

suggested sentencing range. When the court so indicates, it may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offenses as it relates to the impact on the life of the victim and the community, so long as the court also states of record the factual basis and specific reasons which compelled him to deviate from the guideline range.

*Commonwealth v. Mouzon*, 828 A.2d 1126, 1128 (Pa. Super. 2003) (internal citations and quotation marks omitted). The trial court also is required to consider the sentencing guidelines. *See Commonwealth v. Bonner*, 135 A.3d 592, 604 (Pa. Super. 2016). When the challenged sentence is within the sentencing guidelines, we may only vacate a sentence where the application of the guidelines would be clearly unreasonable. *Id.* (citing 42 Pa.C.S.A. § 9781(c)(2)). Here, it is undisputed that Appellant received a sentence outside of the aggravated range of the guidelines. The trial court imposed upon him a statutory maximum sentence of 10 to 20 years' imprisonment. *See* 18 Pa.C.S.A. § 1103(a). Thus, we may vacate his sentence only if it was clearly unreasonable. *Bonner*, 135 A.3d at 604.

Initially, we note that "[w]here a PSI exists, we presume that the trial court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A PSI constitutes the record and speaks for itself." *Bonner*, 135 A.3d at 605 (original brackets and citation omitted). Here, the trial court was provided with a PSI and we presume the trial court was aware of the relevant information contained therein. The trial court also was aware of the sentencing guidelines. *See* Trial Court Opinion, 8/13/18, at 10.

Moreover, as stated earlier, the trial court provided a number of reasons for sentencing Appellant outside of the sentencing guidelines. Specifically, the trial court found that the victim was Appellant's non-verbal cousin with a severe mental disability and a mental capacity of a five-year-old child. The court further found that Appellant abused his position of trust by taking the victim out for ice cream and then raping her at the little league parking lot. Because of the rape, the victim became pregnant and ultimately carried and delivered a child. The court also found that the pregnancy and the resulting birth caused the victim tremendous physical and emotional trauma because the victim lacked the capacity to appreciate that was happening to her body. The trial court observed that the significant age difference between the victim and Appellant. At the time of the rape, the victim was 27 years old and Appellant was 58 years old. Finally, the trial court found that Appellant did not accept responsibility for his actions even though he pleaded guilty *sub judice*. Given the trial court's review of the PSI and based on the foregoing factors, we cannot conclude that the trial court abused its discretion under the circumstances of this case in imposing upon Appellant a statutory maximum sentence of 10 to 20 years' imprisonment for rape of a mentally disabled person. Accordingly, Appellant is not entitled to relief.

Finally, based on our review of the record, we conclude that, under **Commonwealth v. Butler**, 173 A.3d 1212 (Pa. Super. 2017), **appeal**

*granted*, No. 47 WAL 2018, 2018 WL 3633945 (Pa. filed July 31, 2018),

Appellant's SVP designation is unconstitutional.[5]

As this Court has explained:

> **Butler** applied **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017), which held that the sexual offender requirements under the Sexual Offender Registration and Notification Act [("SORNA")], including its SVP framework, constitute punishment. **Butler** determined that, as a result of **Muniz**, the SVP procedure is subject to the constitutional requirement that the facts constituting that punishment must be found by a fact-finder beyond a reasonable doubt. Thus, 42 Pa.C.S.A. § 9799.24(e)(3), which requires the trial court to find the relevant facts by clear and convincing evidence, was deemed unconstitutional. **Id.** at 1218.

**Commonwealth v. Tighe**, 184 A.3d 560, 583 (Pa. Super. 2018).

Thus, in light of **Butler**, Appellant's SVP designation under SORNA is illegal. We vacate the May 4, 2018 judgment of sentence only with respect to the trial court's SVP determination under SORNA and remand this matter to the trial court to determine what registration requirements apply to Appellant, and to provide him proper notice thereof.

We have conducted an independent review of the record and addressed Appellant's arguments on appeal. Based on our conclusions above, we agree with Appellant's counsel that the sentencing issues Appellant seeks to litigate in this appeal are wholly frivolous. However, in light of Appellant's SVP designation, which implicates the legality of his sentence, we deny counsel's

---

[5] As we observed in **Butler**, we *sua sponte* may review Appellant's SVP designation because it implicates the legality of his sentence. **Butler**, 173 A.3d at 1214-15.

- 16 -

petition to withdraw.  We vacate the judgment of sentence only insofar as it relates to the SVP designation, but affirm it in all other respects.

Judgment of sentence affirmed, in part, and vacated, in part.  Case remanded for further proceedings consistent with this Memorandum.  Petition to withdraw denied.  Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/22/2019